**Donald BIRGE, Appellant,**

v.

**COMMUNITY FINANCE CORPORATION, Appellee.**

**No. 14258.**

Court of Civil Appeals of Texas.

San Antonio.

May 20, 1964.

Hardy, Galindo & Sharpe, Brownsville, for appellant.

George W. Storter, Garcia & Warburton, Brownsville, for appellee.

BARROW, Justice.

Community Finance Corporation sued Donald Birge, who formerly did business in Duncan, Oklahoma, as Donald Birge Mobile Homes, on nine defaulted non-negotiable conditional sales contracts which Birge had assigned to plaintiff. After a non-jury trial, judgment was rendered favorable to plaintiff on five of these contracts for a total sum of $10,657.59, and defendant has appealed.

Each contract involves the sale of a mobile trailer home on a conditional sales contract which was discounted by Birge with Community Finance Corporation under the following written assignment: "WITH RECOURSE—This contract is assigned to Community Finance Corporation and/or assigns subject to the warranties, and representations of the General Assignment of this contract. Seller further agrees that if the Purchaser shall fail to pay any installment or payment promptly when due, or if Purchaser should in any way breach the provisions of this contract, Seller will repurchase this contract on demand and will pay forthwith all of the time balance remaining unpaid. No renewal, refinancing, extension of time or delay of enforcement against the Purchaser or the property shall release Seller from liability hereunder."

The trial court made findings of fact and conclusions of law applicable to all five counts, substantially as follows: (a) Birge presented each of the contracts to appellee for discounting and each was accepted under the terms and conditions of the written assignment; (b) Birge received payment for each of the contracts assigned; (c) the purchaser of the property given as security failed or refused to pay in accordance with the terms of the contract; (d) Birge failed to give notice to appellee of his change of address and to keep appellee advised of his whereabouts; (e) there is no evidence that Birge authorized the post office to inform persons of his whereabouts; (f) after repossession and sale there remained unpaid the following amounts: Count V, $1,590.70; Count VI, $2,599.64; Count VIII, $2,154.-50; Count IX, $653.77.

Count I involved a contract dated September 29, 1956, on a trailer sold to Roscoe E. Walker. The trial court found: "In the process of delivery to the purchaser, the security for the contract, the house trailer, was destroyed. The sum of $3,372.98 is due Plaintiff under the terms of the contract after applying all offsets and credits. Plaintiff has not been reimbursed for the aforementioned sum from any source." Count V involved a contract dated August 13, 1956, on a home trailer sold to Walter Glen Scott. On August 19, 1958, Scott transferred his equity to Fred Foraker with the approval of appellee, but without the knowledge of Birge. Scott expressly guaranteed payment by Foraker. Count VI involved a contract dated October 31, 1956, on a house trailer sold to Herman Willingham. Count VIII involved a contract dated September 29, 1956, on a house trailer sold to Preston R. Smith. On April 4, 1957, Smith transferred his equity to Vernon F. Norton with the approval of appellee, but without the written approval of Birge. Smith expressly guaranteed payment by Norton. Count IX involved a contract dated July 13, 1956, on a house trailer sold to Willard Vaught. On June 19, 1957, Vaught transferred his equity to Max L. Ladd, with the written approval

of both appellee and Birge. Vaught expressly guaranteed payment by Ladd of the note.

Appellant urges as to all counts that he is not liable because appellee did not, as required by the "on demand" clause of the assignment, promptly make demand upon him upon default by the original purchasers. The trial court found as to Count I, that demand was made of appellant on February 4, 1958; as to Count V, demand was made of appellant on April 24, 1961; and that as to Counts V, VI, VIII and IX, appellant, Birge, was not given notice of the sale of the security.

■■ Notice to Birge of the sales of the security involved in those four counts was not required. Birge closed his business in Duncan, Oklahoma, in July or August, 1957, and moved to Cameron County, Texas, where he opened a motel. He testified that he left his forwarding address at the post office and that, in addition, his wife's parents continued to live in Duncan, and by inquiry appellee could have located him. Appellee's president, who lived in Ardmore, Oklahoma, where appellee's principal office was located, testified that appellee was unable to locate Birge after he left Duncan, and that Birge did not give them a change of address. The trial court found, as to each of the above four counts, that the sale of the security was necessary to mitigate the damages, and since appellee was not aware of Birge's whereabouts, it acted with reasonable prudence in selling the security without waiting to locate Birge and give him notice of the sale.

Art. 571, Vernon's Ann.Civ.Stats., provides that the assignee of a non-negotiable instrument shall be entitled to recover from any previous assignor thereof, but in order to hold the assignor or endorser as surety for the payment of the instrument, Art. 570, V.A.C.S., provides that the assignee shall use due diligence to collect the same from the maker. There is no question raised as to the diligence used by appellee on any of these counts, to collect from the purchaser, or as to the manner of conducting the sale of the security. In W. T. Burton Company v. Keown Construction Company, Tex.Civ. App., 353 S.W.2d 909, the Court held that the effect of these statutes is that any person making a written assignment of a non-negotiable instrument becomes liable as surety for payment thereof, unless he qualifies his liability by the phrase "without recourse" or words of similar import. It was there said: "We think it follows from the statutes mentioned that ordinarily either the assignor or one who endorses a non-negotiable note in effect says 'if the holder cannot, by using due diligence, obtain payment from the maker I will pay.' "

■ Appellant's statutory guaranty was not changed by his written assignment to appellee. Each contract had forms for five types of assignment and the import of this one was clearly indicated by the capitalized words "WITH RECOURSE." The effect of this assignment was to bind appellant to pay the note upon the sole contingency of default by the purchaser. Burton v. Keown, supra; Ray v. Spencer, Tex.Civ.App., 208 S.W.2d 103; Cullum v. Commercial Credit Co., Tex.Civ.App., 134 S.W.2d 822; Commerce Securities Corp. v. Congleton, Tex. Civ.App., 8 S.W.2d 803.

Appellant complains of the judgment on Count I for the additional reasons that under the contract appellee had the duty to see that the property was adequately insured and that there was a settlement, payment and release of the insurance coverage of the loss in question, which discharged appellant. The trailer sold under this contract was wrecked and destroyed on Oct. 5, 1956. The contract shows various insurance coverages, including vendor's single interest coverage, which protected appellee as assignee of the contract from any loss thereon.

■ Birge testified that he advised Mr. Moore, who managed appellee's Duncan office, of the wreck and Moore said he would file an insurance claim. About ten

days later, Birge went to appellee's Duncan office, endorsed a check in the amount of $4,122.00, and was advised by Moore that this closed the matter. Appellee filed a proof of loss with the insurer on June 10, 1957, asserting claim for $5,000.00. Appellee's president testified that the claim was rejected because the trailer was still in the custody of appellant when wrecked and therefore the coverage was not in effect. The trial court found that appellee had never received payment for this loss and rendered judgment against appellant. We cannot say that this finding has no support in the evidence. Neither can we say that the written terms of the conditional sales contract require a different conclusion as a matter of law.

■ As to Counts V and VIII, appellant asserts that he is not liable on his assignment because there was a novation when appellee entered into an agreement with the original purchaser and a third party, for the third party to assume the original contract, and appellant did not consent to or join in this new agreement.

In Chastain v. Cooper & Reed, 152 Tex. 322, 257 S.W.2d 422, the Supreme Court stated the rule as follows:

"* * * a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first. * * * In keeping with this general rule it is held that to effect a novation by the substitution of one debtor for another thereby releasing the first, there must be agreement to that effect between all three parties, and a presumption of an intention to release the first debtor will not arise from the mere taking of the second."

That case recognized that ordinarily this intention is a fact issue. See also, Schwab v. Schlumberger Well Surveying Corp., 145 Tex. 379, 198 S.W.2d 79.

The trial court by its judgment has found that there was no novation of either of these contracts and it is our opinion that there is evidence to support these findings. In each instance, the original purchaser expressly guaranteed payment of the debt by the third party. Birge testified that he personally handled the sale of Smith's equity to Norton. At the time of Scott's transfer to Foraker, Birge had left Duncan, Oklahoma, and the trial court found that his whereabouts were unknown to appellee. There is no complaint of lack of diligence by appellee in attempting to collect the debt on either count from the third party or the original purchaser. The assignment from appellant to appellee authorized appellee to renew or refinance the contract without a release of appellant. Appellant's points that, as a matter of law, there was a novation as to Counts V and VIII are overruled.

■ Appellant also complains of the award of interest in the amount of $286.00 on Count V, since there is no finding of fact or conclusion of law to support such amount. The contract provides for interest on delinquent payments at the highest legal rate. This provision authorized the award of interest and there is no contention that the amount awarded was excessive.

The judgment is affirmed as to all counts.